UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ETELKA BRIKSZA, ROBERT
BRIKSZA, MIRSHA LOPEZ, TOMAS          Case No. 2:23-cv-11487
BRIKSZA, and RUDOLF BRIKSZA,          District Judge George Caram Steeh
                                      Magistrate Judge Kimberly G. Altman
        Plaintiffs,

v.

BOB FONTANA, JUSTIN GRIFFEE,
BILL WODJAK, ASPEN DENTAL
CORPORATION, GRIFFEE DENTAL
CORPORATION, GENESIS CREDIT
CORPORATION, and JOHN DOES,

        Defendants.
_____/


**REPORT AND RECOMMENDATION
TO GRANT DEFENDANTS' MOTIONS TO DISMISS (ECF Nos. 7, 13, 35)
AND
TO *SUA SPONTE* DISMISS DEFENDANT BILL WODJAK
AND
TO DENY PLAINTIFFS' MOTIONS FOR
DEFAULT JUDGMENT (ECF No. 12), JUDICIAL NOTICE (ECF No. 21),
AND AN ORDER TO SHOW CAUSE (ECF No. 38)
AND
TO DISMISS THE CASE**[1]

---

[1] Upon review of the motions, the undersigned deems these matters appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

i

# Table of Contents

I.      Introduction ................................................................................................1

II.     The Complaint .............................................................................................2

III.    The Pending Motions .................................................................................4

IV.     Fontana, Griffee, and Griffee Dental's Motion to Dismiss .......................5

   A.    Legal Standards ......................................................................................5

   B.    Discussion ...............................................................................................8

      1. Personal Jurisdiction ............................................................................8

      2. Venue ...................................................................................................13

      3. Service of Process ...............................................................................14

V.      Genesis' Motion to Dismiss ....................................................................15

   A.    Legal Standards ....................................................................................16

   B.    Discussion .............................................................................................18

      1. Arbitration Agreement ........................................................................18

      2. Estoppel and Failure to State a Claim ................................................22

      3. Service of Process ...............................................................................24

      4. *Sua Sponte* Dismissal of Wodjak .......................................................26

VI.     Motion to Set Aside Entry of Default and Dismiss as to Aspen Dental .....27

   A.    Legal Standards ....................................................................................27

      1. Motion to Set Aside ............................................................................27

      2. Service of Process ...............................................................................28

   B.    Discussion .............................................................................................29

      1. Motion to Set Aside and Motion for Default Judgment.....................29

      2. Motion to Dismiss ..............................................................................30

VII.    Conclusion ...............................................................................................32

## I.     Introduction

This is a civil case alleging medical malpractice, negligence, violation of the
Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-
68, and various other state law torts.  Plaintiffs asserted jurisdiction based on
diversity and federal question.  In broad terms, plaintiffs allege that defendants
operate various dentistry franchises, one of which refused to treat an elderly
patient, Etelka Briksza (Etelka), after securing funds from plaintiffs with the
promise of providing dental care.  The other plaintiffs are Etelka's children.  (ECF
No. 1).  Under 28 U.S.C. § 636(b)(1), all pretrial matters have been referred to the
undersigned.  (ECF No. 8).

A number of motions are now pending, which will be outlined below,
including dispositive motions from all defendants who have appeared.  On October
30, 2023, the Court stayed motion practice until the pending motions could be
decided.  (ECF No. 43).  The dispositive motions are now fully briefed and ready
for consideration.  (ECF Nos. 7, 10, 13, 15, 19, 35, 36, 37, 39, 40, 42, 46).

For the reasons that follow, the undersigned recommends that defendants'
motions to dismiss, (ECF Nos. 7, 13, 35), be GRANTED; that Bill Wodjak
(Wodjak) be DISMISSED *SUA SPONTE*; that the remaining motions filed by
plaintiffs, (ECF Nos. 12, 21, 38), be DENIED; and that the case be DISMISSED.

Additionally, the parties are reminded that under the Court's October 30,

1

2023 order, (ECF No. 43), this case remains stayed until the district judge rules on this Report and Recommendation (R&R), with the exception of any objections to the R&R and responses to any objections.

## II.    The Complaint

Plaintiffs Etelka, Robert Briksza (Robert), Tomas Briksza (Tomas), Rudolf Briksza (Rudolf), and Mirsha Lopez (Lopez) filed a 100 page complaint, including sixty-three causes of action, against defendants Bob Fontana (Fontana), Justin Griffee (Griffee), Wodjak, Aspen Dental Corporation (Aspen Dental), Griffee Dental Corporation (Griffee Dental), Genesis Credit Corporation (Genesis),[2] and John Does one through twenty.  (ECF No. 1).

Plaintiffs allege that Etelka, an eighty-three-year-old woman, visited Griffee for dental work in Florida to relieve her substantial tooth pain.  (*Id.*, PageID.2-3).  Griffee, while conducting a dental business with Aspen Dental and Griffee Dental, assured Etelka that he could help her, but that "if she could not pay then she just had to 'live in pain' " thereby fraudulently inducing Etelka to take on significant debt.  (*Id.*, PageID.3).  Griffee told Etelka to call her children, Robert, Tomas, Rudolf, and Lopez, to assist in paying for her dental care.  (*Id.*).  The children each paid some money toward Etelka's care, but it was not enough, so Griffee told her

_____

[2] In its motion, Genesis refers to itself as Genesis FS Card Services, Inc. and says that not aware of any entity named "Genesis Credit Corporation" and that "a search did not find any such entity."  (ECF No. 13, PageID.268).

to take out a line of credit from Genesis to fund the rest, which she did. (*Id.*).

Griffee promised Etelka that her pain would be treated and that she would be provided with fully functioning artificial teeth. (*Id.*, PageID.4). He also promised that she could visit his office at any time for pain care. (*Id.*). Griffee subsequently broke that promise, refusing to treat her on at least five subsequent occasions. (*Id.*). On one occasion, Etelka complained of her lack of treatment in the presence of other patients, causing Griffee to no longer allow her to visit his office for treatment. (*Id.*, PageID.5). He told her to go somewhere else and refused to honor his agreement to provide her the medical care that she paid for. (*Id.*). He also intimidated her and implied a threat of physical force, which caused Etelka to leave the office. (*Id.*).

Plaintiffs allege that Genesis continues to profit off of its credit agreement with Etelka, despite that it knew or should have known that the financed work was never finished. (*Id.*, PageID.6). Fontana is alleged to be the corporate officer responsible for the harm caused by Aspen Dental, which worked in concert with Griffee and Griffee Dental to deny Etelka's paid-for dental care. (*Id.*). Wodjak is alleged to be the corporate officer responsible for the acts of Genesis. (*Id.*). Plaintiffs allege that defendants worked together, in concert, in furtherance of a conspiracy, and in a pattern of racketeering activity to deny plaintiffs their money and/or dental care due. (*Id.*).

3

Plaintiffs say that in addition to monetary loss, Etelka has suffered significant unnecessary pain, anxiety, distress, humiliation, and physical harm from defendants. (*Id.*, PageID.11). They assert that defendants are liable for breach of contract, negligence, gross negligence, theft, fraud, RICO violations, intentional infliction of emotional distress, and medical malpractice. (*Id.*, PageID.13-82).

### III.    The Pending Motions

After being served with plaintiffs' complaint, Fontana, Griffee, and Griffee Dental filed a motion to dismiss. (ECF No. 7). Those defendants then filed a supplemental brief regarding their motion, (ECF No. 10), plaintiffs responded, (ECF No. 15), and defendants replied, (ECF No. 19). Plaintiffs later filed a "supplemental response," which has been attached on the docket to their response to this motion. (ECF No. 34).

On August 14, 2023, plaintiffs filed a motion for default judgment as to Aspen Dental, Genesis, and Wodjak. (ECF No. 12). Genesis and Aspen Dental responded separately, (ECF Nos. 14, 16), while Wodjak has yet to respond or appear in the case. Plaintiffs have filed a reply. (ECF No. 22). In addition, a Clerk's Entry of Default was entered as to Aspen Dental, (ECF No. 33), and Wodjak, (ECF No. 29), but was denied as to Genesis because it had already filed a motion to dismiss at the time of the Clerk's review, (ECF No. 31).

On September 8, 2023, Genesis filed a motion to dismiss. (ECF No. 13).

4

Plaintiffs filed a response, an amended response, and then a supplemental brief to their amended response, (ECF Nos. 37, 39, 40), and Genesis filed a reply, (ECF No. 42), all in October 2023.

On October 11, 2023, counsel for Fontana, Griffee, and Griffee Dental filed a motion to set aside entry of default and to dismiss on behalf of Aspen Dental, which they assert was not properly identified or served by plaintiffs.  (ECF No. 35).  Plaintiffs filed a response on November 13, 2023.  (ECF No. 46).

Finally, also pending are plaintiffs' motions for judicial notice, (ECF No. 21), and for the Court to order defendants to show cause why they should not be held in default, (ECF No. 38).  The motion for judicial notice was not responded to, and the time for response has passed.  Genesis has responded to the motion for order to show cause, (ECF No. 41), and plaintiffs have filed a reply, (ECF No. 45).

The motions will be considered in turn below.

IV.    Fontana, Griffee, and Griffee Dental's Motion to Dismiss

Fontana, Griffee, and Griffee Dental seek dismissal under Federal Rules of Civil Procedure 12(b)(2), (3), and (5).  They assert a lack of personal jurisdiction, improper venue, and lack of service of the summons and complaint as reasons for dismissal.

A.    Legal Standards

5

Under Federal Rule of Civil Procedure 12(b)(2), "[t]he plaintiff bears the burden of establishing through 'specific facts' that personal jurisdiction exists over the non-resident defendant, and the plaintiff must make this demonstration by a preponderance of the evidence." *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012). Where, as here, the court does not conduct an evidentiary hearing on the issue of personal jurisdiction in considering a Rule 12(b)(2) motion, the plaintiff "need only make a prima facie showing of jurisdiction." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). The Court does "not weigh the facts disputed by the parties but instead consider[s] the pleadings in the light most favorable to the plaintiff." *Id.* The Court may, however, "consider the defendant's undisputed factual assertions." *Huizenga v. Gwynn*, 225 F. Supp. 3d 647, 654-55 (E.D. Mich. 2016).

A case may be dismissed under Federal Rule of Civil Procedure 12(b)(3) for improper venue. "On a motion to dismiss for improper venue, the plaintiff[s] bear[] the burden of proving that venue is proper." *Audi AG & Volkswagen of Am., Inc. v. Izumi*, 204 F. Supp. 2d 1014, 1017 (E.D. Mich. 2002). "The Court may examine facts outside the complaint but must draw all reasonable inferences and resolve factual conflicts in favor of the plaintiff[s]." *Id.* "If a defendant prevails on a Rule 12(b)(3) challenge, the Court has the discretion to decide whether the

action should be dismissed or transferred to an appropriate court." *Id.* (citing 28 U.S.C. § 1406).

Under Federal Rule of Civil Procedure 12(b)(5), a case may be dismissed for insufficient service of process.  Federal Rule of Civil Procedure 4(e) provides that service upon an individual from whom a waiver has not been obtained can be accomplished by delivering a copy of the summons and complaint to the individual personally, by leaving copies with an appropriate person residing at the individual's usual place of abode, or by delivering a copy of the summons and complaint to an agent authorized by appointment or law to receive service of process.  Fed. R. Civ. P. 4(e)(2).  Service upon a corporation may be made in a similar manner, or "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process[,]" Fed. R. Civ. P. 4(h)(1), but "service by mail does not satisfy the requirements of Rule 4(h)(1)(B)." *Technologists, Inc. v. MIR's Ltd.*, 725 F. Supp. 2d 120, 127 (D.D.C. 2010). Alternatively, a plaintiff may follow the state law for effectuating service "where the district court is located or where service is made."  Fed. R. Civ. P. 4(e)(1).

B.     Discussion

1.     Personal Jurisdiction

a.     Standard

Where "a federal court's subject matter jurisdiction over a case stems from

the existence of a federal question, personal jurisdiction over a defendant exists if

the defendant is amenable to service of process under the forum state's long-arm

statute and if the exercise of personal jurisdiction would not deny the defendant

due process." *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (cleaned up).

Jurisdiction can exist on the basis of either *general* or *limited* personal jurisdiction.

*Bagsby v. Gehres*, 195 F. Supp. 2d 957, 962 (E.D. Mich. 2002).  "General personal

jurisdiction exists over an individual when that person is physically served in

Michigan, is domiciled in Michigan, or consents to the exercise of personal

jurisdiction." *Id.*  "Limited personal jurisdiction may be exercised over a

defendant who has certain minimum contacts with the forum but only over claims

which arise from or relate to those contacts." *Id.* (citing *Theunissen v. Matthews*,

935 F.2d 1454, 1460 (6th Cir. 1991)).

The Sixth Circuit has held that " '[w]here the state long-arm statute extends

to the limits of the due process clause, the two inquiries are merged and the court

need only determine whether exercising personal jurisdiction violates

constitutional due process.' " *Children's Legal Servs., PLLC v. Shor Levin &*

8

*Derita, PC*, 850 F. Supp. 2d 673, 679 (E.D. Mich. 2012) (quoting *Bridgeport Music, Inc. v. Still N The Water Publ'g*, 327 F.3d 472, 477 (6th Cir. 2003)). "The Michigan Supreme Court has construed Michigan's Long-Arm Statute to bestow the broadest possible grant of personal jurisdiction consistent with due process." *Audi AG & Volkswagon of Am., Inc. v. D'Amato*, 341 F. Supp. 2d 734, 741 (E.D. Mich. 2004).

A court can constitutionally exercise limited personal jurisdiction over an out-of-state defendant where the defendant has "certain minimum contacts with [the forum] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)); *accord Theunissen*, 935 F.2d at 1459-61. Minimum contacts are satisfied where the defendant has "purposely avail[ed] itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). " 'Purposeful availment,' the 'constitutional touchstone' of personal jurisdiction, is present where the defendant's contacts with the forum state 'proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 889 (6th Cir. 2002) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (emphasis in original)).

The Sixth Circuit has created a three-part test to determine whether the exercise of personal jurisdiction would comport with due process.

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

### b.    Application

Plaintiffs argue that Fontana is liable for their injuries based on his association with Aspen Dental, which is also associated with Griffee and Griffee Dental, who directly caused Etelka's physical injuries.  Aspen Dental, Griffee, and/or Griffee Dental also charged her for their inadequate and unfinished services and accepted payment from her children for same.  Plaintiffs say that because Aspen Dental does business in Michigan and has caused them injuries which persist in Michigan, even though Etelka's dental office visits occurred in Florida, jurisdiction exists in Michigan.

According to the New York Corporation Search website, Fontana is the CEO of Aspen Dental Management, Inc., a New York corporation.[3]  Although service of process is in dispute, Fontana was purportedly served at an Illinois

---

[3] Search conducted on https://apps.dos.ny.gov/publicInquiry/ (last visited January 30, 2024).

10

address.  Further, his affidavit affirms that he resides in Florida and "also work[s] in the State of Illinois."  (ECF No. 10, PageID.149).  It states that he has never lived or performed professional activities for Aspen Dental in Michigan.  (*Id.*).

In exceptional cases, for the purposes of general personal jurisdiction, "a corporation's affiliations with a forum state might be so extensive as to render it 'at home' somewhere other than its place of incorporation or principal place of business."  *Sullivan v. LG Chem, Ltd.*, 585 F. Supp. 3d 992, 1000 (E.D. Mich. 2022) (quoting *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017)), *rev'd and remanded on other grounds*, 79 F.4th 651 (6th Cir. 2023).  This is not an exceptional case.  Although plaintiffs argue in their response that Fontana had recently been in Michigan to conduct business, this fact is not alleged in the complaint.  Even had it been, it does not establish that either Fontana or Aspen Dental are "at home" in the state of Michigan, with which plaintiffs have shown no other connection.  Therefore, Michigan does not have general personal jurisdiction over Fontana.

Limited or specific personal jurisdiction is also lacking.  The fact that Fontana's company may be seeking continued payment for services from one or more of the plaintiffs after they moved to Michigan does not establish minimum contacts.  *See SFS Check, LLC v. First Bank of Delaware*, 990 F. Supp. 2d 762, 771 (E.D. Mich. 2013) ("The fact that a corporation does business in Michigan,

11

without more, is insufficient for a court to assert personal jurisdiction over the directors and officers of that corporation."). Just because an individual "exercises control over the company is not a sufficient basis on which to assert limited personal jurisdiction over that individual in another state in which the company does business." *Id.* Rather, plaintiffs would have to show that Fontana was "actively and personally involved in the conduct giving rise to the claim." *One Ethanol, LLC v. BOX BioScience, LLC*, 622 F. Supp. 3d 568, 577 (W.D. Mich. 2022).

Because plaintiffs' allegations do not plausibly connect Fontana to Michigan, either in general fashion or through contacts related to this suit, the Court lacks jurisdiction over Fontana and the claims against him should be dismissed.

As to Griffee and Griffee Dental, there is even less reason to believe that a Michigan court could entertain a suit against them. Griffee and Griffee Dental were served and by all accounts are domiciled in Florida. *See* ECF No. 7, PageID.143-144 (Griffee Affidavit). Plaintiffs do not contend that either Griffee or Griffee Dental are "at home" in Michigan. The only Michigan connection to these two parties is that they have sought and potentially received payment for services rendered in Florida from plaintiffs, two of whom now reside in Michigan. This falls far short of the due process requirements of fair play and substantial justice.

Thus, plaintiffs' claims against Griffee and Griffee Dental should be dismissed for lack of personal jurisdiction as well.

## 2.     Venue

Fontana, Griffee, and Griffee Dental also argue that venue in the Eastern District of Michigan is improper as to one or more of them. "In cases with multiple defendants, venue must be proper with respect to *all* defendants." *Overland, Inc. v. Taylor*, 79 F. Supp. 2d 809, 811 (E.D. Mich. 2000) (emphasis added). Under 28 U.S.C. § 1391(b), venue is proper in (1) a judicial district in which a defendant resides, if all defendants reside within that state, (2) a judicial district in which a substantial part of the events giving rise to the cause of action occurred, or a substantial part of property that is the subject of the action is situated, or (3) if neither of the previous options apply, any judicial district in which a defendant is subject to the court's personal jurisdiction.

One need not look farther than the complaint to see that no defendant resides in any judicial district in Michigan, nor do they all reside in the same state. Further, it cannot be said that a substantial part of the allegations, taking them to be wholly true, occurred in Michigan. To the contrary, the allegations that inadequate dental services were provided in Florida point toward Florida being a proper venue, not Michigan. Thus, prongs (1) and (2) are not met. Prong (3) is also not met by plaintiffs because, as discussed in the previous section, these defendants are

13

not subject to this Court's personal jurisdiction.

As noted above, improper venue may be cured by either dismissal or transfer to a proper venue.  Because personal jurisdiction is lacking, the best course of action is to dismiss plaintiffs' claims against Fontana, Griffee, and Griffee Dental. As such, the undersigned does not recommend a transfer.

### 3.      Service of Process

Finally, the parties dispute whether service was effectuated as to Fontana, Griffee, and Griffee Dental.  This issue is moot, as defendants have responded and shown why the case should be otherwise dismissed.  However, it will be briefly addressed for the sake of completeness.

As noted above, the Federal Rules do not contemplate service by mail. However, they allow for service under state rules "where the district court is located or where service is made."  Fed. R. Civ. P. 4(e)(1).  In Michigan, service may be made by certified mail with restricted delivery.  *See Bullington v. Corbell*, 293 Mich. App. 549, 557 (2011) (citing M.C.R. § 2.105(A)(2)).  Plaintiffs contend that the summons and complaint were mailed to Fontana, Griffee, and Griffee Dental using restricted delivery.  *See* ECF No. 27, PageID.434 (returned green cards with "Certified Mail Restricted Delivery" checked).  Defendants say that Fontana and Griffee did not actually sign the green cards, which renders their delivery unrestricted despite the box being checked.

14

"The party on whose behalf service of process was made has the burden of establishing its validity." *Metro. Alloys Corp. v. State Metals Indus., Inc.*, 416 F. Supp. 2d 561, 563 (E.D. Mich. 2006).  Here, it is clear that certified mail was properly sent to Fontana and Griffee, but it is unclear whether the signature on Griffee's green card is his or someone else's.  The green card for Fontana appears to be unsigned.  *See* ECF No. 27, PageID.434.  Despite having the opportunity to do so, neither party addressed this issue in their affidavits.

Determining whether service upon defendants was proper would require further factual inquiry.[4]  Regardless, they have appeared in this matter and the undersigned recommends their dismissal on the grounds of jurisdiction and improper venue.  Thus, the Court need not reach the question of whether service was proper.

## V.    Genesis' Motion to Dismiss

Genesis argues that Etelka's claims against it are subject to a binding arbitration agreement and seeks dismissal of those claims under Federal Rules of Procedure 12(b)(1) and (3).  (ECF No. 13).  As for the other plaintiffs, Genesis says that their claims are also subject to arbitration under a theory of estoppel or,

---

[4] As for Griffee Dental, "Michigan law does not permit service on a corporation by mail alone, certified, registered or otherwise." *Etherly v. Rehabitat Sys. of Mich.*, No. 13–11360, 2013 WL 3946079, at *1 (E.D. Mich. July 31, 2013).  However, the parties did not discuss whether such service would be proper under Florida law and the undersigned need not consider it.

alternatively, that those plaintiffs lack standing and have failed to state a claim. (*Id.*). Genesis also argues that it was never properly served, in that the named party was "Genesis Credit Corporation," a non-existent entity, and that service was made to Wodjak, who "is not a director, trustee, or person in charge of the office or business of Genesis, and [] is not employed by Genesis." (ECF No. 13-1, PageID.287). Genesis says the claims against it should be dismissed for this reason, and that plaintiffs' motion for default judgment against it, (ECF No. 12), should be denied.

Plaintiffs say that service was proper and the Court should not consider Genesis' motion; that no plaintiff agreed to or signed the arbitration agreement; and that the purported agreement was subsequently sold to a third party, rendering Genesis unable to enforce it now against plaintiffs.

### A.    Legal Standards

Under Federal Rule of Civil Procedure 12(b)(1), claims may be dismissed for lack of subject-matter jurisdiction. The party opposing a Rule 12(b)(1) motion "bears the burden of proving jurisdiction." *EEOC v. Hosanna-Tabor Evangelical Lutheran Church & Sch.*, 597 F.3d 769, 776 (6th Cir. 2010), *rev'd on other grounds*, 565 U.S. 171 (2012). Dismissal under Fed. R. Civ. P. 12(b)(1) is appropriate where a plaintiff lacks standing. *Ward v. Alt. Health Delivery Sys., Inc.*, 261 F.3d 624, 626 (6th Cir. 2001).

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action").

Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Finally, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by *pro se* parties, " 'courts should not

17

have to guess at the nature of the claim asserted.' " *Frengler v. Gen. Motors*, 482

F. App'x 975, 976-7 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594

(6th Cir. 1989)). Moreover, "courts may not rewrite a complaint to include claims

that were never presented . . . nor may courts construct the Plaintiff's legal

arguments for him. . . . [N]either may the Court 'conjure up unpled allegations[.]'

" *Rogers v. Detroit Police Dept.*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2009)

(Ludington, J., adopting report and recommendation of Binder, M.J.).

### B. Discussion

#### 1. Arbitration Agreement

##### a. Standard

As an initial matter, "[c]ourts in the Sixth Circuit are split on whether a

motion to dismiss based on an arbitration should be brought under Federal Rule of

Civil Procedure 12(b)(1) (lack of subject matter or jurisdiction) or Rule 12(b)(6)

(failure to state a claim)." *Power Distrib. Co., Inc. v. Grenzebach Corp.*, No 16-

12740, 2016 WL 6611032, at *2 (E.D. Mich. Nov. 9, 2016) (collecting cases and

discussing the split); *see also FCCI Ins. Co. v. Nicholas Cnty. Libr.*, No. 5:18-CV-

038-JMH, 2019 WL 1234319, at *3 (E.D. Ky. Mar. 15, 2019) (same); *Avient Corp.*

*v. Westlake Vinyls, Inc.*, No. 5:22-CV-51-TBR, 2011 WL 3569019, at *4 (W.D.

Ky. Aug. 18, 2022) (same). The choice of rule concerns "on one hand, whether

evidence outside the pleadings is being used and whether the case should be

dismissed with prejudice under Rule 12(b)(6) and, on the other, whether the term 'jurisdiction' . . . is being used with precision under Rule 12(b)(1)." *Power Distrib. Co.*, 2016 WL 6611032, at *2.

Generally, "because a decision to dismiss this case due to the arbitration agreement would not prevent plaintiffs from litigating the merits of their claim but would merely transfer the forum in which the litigation on the merits would occur," courts in these circumstances treat such motions as ones to dismiss under Rule 12(b)(1). *New Heights Farm I, LLC v. Great Am. Ins. Co.*, No. 1:23-CV-663, 2024 WL 123644, at *4 (W.D. Mich. Jan. 11, 2024) (cleaned up). This is especially true where "no party argues for the retention of jurisdiction should the claims be dismissed on this theory" and is "consistent with the majority of federal courts to consider this question." *Id.*

### b.   Application

Genesis contends that by opening and using a credit account with it, Etelka entered into a Genesis Credit Account Agreement (the Agreement), (ECF No. 13-1), containing a binding arbitration clause that requires dismissal of this case. The Agreement is attached to Genesis' motion, as is a Declaration from the COO of Genesis' parent company, Wayne Young (Young), confirming that the Agreement was validly made and that the account was "charged off" from the Bank of Missouri to Genesis when Etelka ceased making payments. (*Id.*).

19

The arbitration clause of the Agreement provides in relevant part as follows:

Except as expressly provided below, you and we must arbitrate individually, by binding arbitration under the Federal Arbitration Act ("FAA"), any dispute or claim between you, on the one hand, and us, our affiliates and agents, on the other hand, if the dispute or claim arises out of or is related to (a) this Agreement (including without limitation, any dispute over the validity of this Agreement to arbitrate disputes or of this entire Agreement), or (b) your Account, or (c) any relationship resulting from this Agreement, or (d) any insurance or other service related to your Account, (e) any other agreement related to your Account (including prior agreements) or any such service, or (f) breach of this Agreement or any other such agreement, whether based on statute, contract, tort or any other legal theory (any "Claim"). However, we will not require you to arbitrate any individual Claims in small claims court or your state's equivalent court, so long as it remains an individual case in that court.

(ECF No. 13-1, PageID.290).

The clause further provides that the account holder may send a rejection notice regarding arbitration, but Young attests that Etelka did not do so. (*Id.*, PageID.286, 290).

The Agreement also provides that it "begins on the earlier of (i) the date you sign or otherwise submit an Application that is approved by us, or (ii) the first date that we extend credit to you on your Account, as evidenced by a signed sales slip or other evidence of indebtedness." (*Id.*, PageID.288).

Genesis says that the arbitration clause language, "(a) this Agreement (including without limitation, any dispute over the validity of this Agreement to arbitrate disputes or of this entire Agreement), or (b) your Account. . . ." fully

20

encompasses Etelka's dispute and requires dismissal from this Court.  It also says that the elements required to make the Agreement binding have been met.  The undersigned agrees.

While plaintiffs contend that Etelka never signed this or any other Agreement, it is undisputed that Etelka did open a credit account with Genesis and was then extended credit, which is all that is required under the Agreement for it to govern.  Under both Missouri[5] and Michigan law, use of the credit offered after being provided with the terms and conditions creates a binding agreement.  *See Citibank (South Dakota), N.A. v. Wilson*, 160 S.W.3d 810, 813 (Mo. App. 2005); *El-Hage v. Comerica Bank*, No. 20-10294, 2020 WL 7389041 (E.D. Mich. Dec. 16, 2020).

Plaintiffs' unsupported counterarguments that the Agreement is invalid, that the Young Declaration is false, and that the Agreement was sold are without merit. There is no evidence to counter the facts Genesis has presented, which show that Etelka validly entered the Agreement with Genesis in order to obtain the credit account that she complains of in the complaint.  The Agreement itself continues to govern Etelka and Genesis even after the account was charged off, as its terms apply to "us [the Bank of Missouri] [and] our affiliates and agents[.]"  (*Id.*,

---

[5] The Agreement states that it is governed by the laws of the State of Missouri, to the extent not preempted by Federal law.  (ECF No. 13-1, PageID.290).

PageID.290).  This is also confirmed by the Young Declaration.  (*Id.*, PageID.286).

Therefore, Etelka's claims against Genesis should be dismissed under Rule 12(b)(1) for lack of standing.  Her disputes are covered by the binding arbitration agreement and must be brought in arbitration under the FAA.

2.      Estoppel and Failure to State a Claim

Genesis argues that the other plaintiffs, Etelka's children, have essentially no claim against it as they were not part of the credit arrangement with Genesis.  To the extent that they do state a claim against Genesis, Genesis argues that any such claim would also be governed by the Agreement, including the arbitration clause, under a theory of estoppel.

a.      Standard

"Five theories for binding nonsignatories to arbitration agreements have been recognized: (1) incorporation by reference, (2) assumption, (3) agency, (4) veil-piercing/alter ego, and (5) estoppel." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 629 (6th Cir. 2003).  "[C]ourts have held non-signatories to an arbitration clause when the non-signatory knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement." *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 199 (3d Cir. 2001).  Michigan courts have adopted this view, noting that courts shall prevent a non-signatory from embracing a contract, and then

22

turning its back on the portions of the contract, such as an arbitration clause, that it finds distasteful. *AFSCME Council 25 v. Wayne Cnty.*, 292 Mich. App. 68, 82 (2011).

b.    Application

To the extent that Etelka's children state a claim against Genesis, that claim would be based on the Agreement between Etelka and Genesis. Plaintiffs have no other connection or theory of liability that would apply to Genesis. They are therefore estopped from bringing a claim based on the Agreement outside of arbitration for the same reasons above that apply to Etelka's claims.

Furthermore, the Agreement itself is binding on these plaintiffs, as it applies to "joint accountholders, authorized users, and persons who have 'agreed to pay obligations on the Account.' " (ECF No. 13, PageID.276 (quoting ECF No. 13-1, PageID.290)). To the extent that any plaintiff may have paid Genesis under the Agreement, a claim based on that payment would be subject to arbitration. The complaint is not clear on whether this occurred on the part of Etelka's children, but if it did not, they would lack standing and fail to state a claim. Therefore, under any theory of the complaint, the claims brought by plaintiffs other than Etelka should also be dismissed.

23

3.      Service of Process

Additionally, Genesis argues that it should be dismissed as it was never properly served.  As discussed above, a plaintiff may follow the state law for effectuating service "where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1).  Plaintiffs attempted service of process by certified mail, as with the other defendants.  "Michigan law does not permit service on a corporation by mail alone, certified, registered or otherwise." *Etherly v. Rehabitat Sys. of Mich.*, No. 13–11360, 2013 WL 3946079, at *1 (E.D. Mich. July 31, 2013). However, neither party has analyzed the sufficiency of service on a corporation by mail under the laws of Oregon, where service was attempted.  The undersigned declines to undertake this analysis on behalf of the parties.

Genesis also says that service was improper because it was made to "Genesis Credit Corporation" and "Bill Wodjak," which are respectively an unrelated corporation to Genesis FS Card Services, Inc. and an individual that is not employed or in any way related to Genesis.

Upon the undersigned's research, it appears that plaintiffs have made a number of reasonable mistakes in attempting service on Genesis.  The green card indicates that service was attempted on "Bill Wodjak / Genesis Credit" at the address of "PO Box 4477, Beaverton, OR 97076."  (ECF No. 27, PageID.435).

24

The card was signed by "Beaver Express," who checked the box indicating "Agent." (*Id.*).

The PO Box address appears to have come from the Agreement, where it is listed in several places as the address to be used for communications under the Agreement. *See, e.g.*, ECF No. 13-1, PageID.289. However, the Agreement consistently lists Genesis FS Card Services, Inc., as the entity at that address. *See id.* Further, a corporation search for Genesis FS Card Services, Inc. in the state of Oregon reveals that the company is now known as Concora Credit Inc., and does not list Wodjak as a registered agent or officer. [6] That search reveals addresses for the registered agent and officers that do not match the address used by plaintiffs for service. [7]

The multiple issues with service excuse Genesis' late filing. Further, as will be discussed below, these service issues also point to denying plaintiffs' motion for default judgment, (ECF No. 12), and plaintiffs' motion for an order to show cause, (ECF No. 38), as to Genesis and Wodjak. Additionally, as explained above, all of plaintiffs' claims against Genesis should be dismissed due to the arbitration

---

[6] Search conducted on https://sos.oregon.gov/business/Pages/find.aspx (last visited January 31, 2024).

[7] An individual named William Wojdak appears to be the registered agent for a company known as Genesis Credit, LLC based in the state of Washington. *See* https://ccfs.sos.wa.gov/ (last visited January 31, 2024). That entity and individual are unrelated to this case.

agreement and plaintiffs' lack of standing.  Thus, this is not a case where service issues could be cured by allowing plaintiffs additional time to correct the service issues or to allow Genesis to accept or waive service.  Therefore, the undersigned recommends dismissal of all claims against Genesis.

4.    *Sua Sponte* Dismissal of Wodjak

As noted above, Wodjak has not appeared in this matter and did not return the green card to accept service by mail.  (ECF No. 27).  He also does not appear to be related to the Genesis at issue in this case or to the allegations of the complaint. Genesis says that Wodjak is not an officer or employee of Genesis, and the undersigned's research reflects that there is a "William Wojdak" that serves as registered agent for a different company named Genesis Credit, LLC based in the state of Washington.  *See* footnote 6.  Plaintiffs accept that Wodjak is not related to Genesis and said they would amend the complaint to remove him.  (ECF No. 40, PageID.546).

"Generally, a district court may not *sua sponte* dismiss a complaint where the filing fee has been paid unless the court gives the plaintiff the opportunity to amend the complaint."  *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999). "Nevertheless, a district court may, at any time, *sua sponte* dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the allegations of a complaint are totally implausible,

26

attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Id.*

Here, where the parties agree and the undersigned's independent research verifies that there is no relation of a "Bill Wodjak" to the complaint, *sua sponte* dismissal of Wodjak is appropriate and recommended.

## VI.    Motion to Set Aside Entry of Default and Dismiss as to Aspen Dental[8]

Defendants say that Aspen Dental has not been properly identified or served by plaintiffs and therefore should not be defaulted, but rather should be dismissed from this matter.  The undersigned agrees.  Specifically, the Clerk's entry of default as to Aspen Dental, (ECF No. 33), should be set aside; plaintiffs' motion for default judgment as to Aspen Dental, (ECF No. 12), should be denied; and the motion to dismiss on behalf of Aspen Dental, (ECF No. 35), should be granted.

### A.    Legal Standards

#### 1.    Motion to Set Aside

Under Federal Rule Civil Procedure 55(a), when a party has "failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  However, "[t]he court may set aside an entry of default for good cause[.]"  Fed. R. Civ. P. 55(c).  In the Sixth Circuit, three factors

---

[8] As noted above, counsel for Fontana, Griffee, and Griffee Dental filed this motion on behalf of Aspen Dental, which they assert was not properly identified or served by plaintiffs.

are relevant to determining whether the moving party had good cause: "(1) whether culpable conduct of the defendant led to the default, (2) whether the defendant has a meritorious defense, and (3) whether the plaintiff will be prejudiced." *Krowtoh II LLC v. ExCelsius Int'l Ltd.*, 330 F. App'x 530, 534 (6th Cir. 2009) (internal quotation marks and citation omitted).

### 2.   Service of Process

As noted above, a plaintiff may follow the state law for effectuating service "where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). Plaintiffs attempted service of process by certified mail, as with the other defendants. However, "Michigan law does not permit service on a corporation by mail alone, certified, registered or otherwise." *Etherly*, 2013 WL 3946079, at *1.

Under New York law, service of a corporation can be achieved under various statutes. *See* N.Y. C.P.L.R. 311, N.Y. C.P.L.R. 312-a, N.Y. Bus. Corp. Law § 306 and § 307. The only one authorizing service by mail to a corporate officer is N.Y. C.P.L.R. 312-a. C.P.L.R. 312-a only requires that the summons, complaint, and required forms be served by first class mail to the defendant, an authorized employee of the defendant, defendant's attorney, or an employee of the attorney. Where an acknowledgment of receipt is not signed by the defendant and returned to the plaintiff, C.P.L.R. 312-a(e) requires personal service to be effectuated in another manner. *Richard A. Hellander, M.D., P.C. v. Metlife Auto &*

*Home Ins. Co.*, 48 Misc. 3d 59, 62 (N.Y. App. Term. 2015).

B.      Discussion

1.      Motion to Set Aside and Motion for Default Judgment

Defendants argue that applying the three *Krowtoh II LLC* factors, there is good cause to set aside the Clerk's entry of default.  Plaintiffs, having obtained said default, now move the Court for an order of default judgment against Aspen Dental.  (ECF No. 12).  For the reasons below, the undersigned recommends that the Clerk's entry of default be set aside and plaintiffs' motion for default judgment as to Aspen Dental be denied.

Defendants contend that plaintiffs' attempt at service was sent to an "Aspen Dental Corporation," but that "no such entity exists by that name."  (ECF No. 35, PageID.473).  In support, they attach a Michigan corporation search showing that there are six entities that operate in Michigan with names beginning with "Aspen Dental," but that none are named "Aspen Dental Corporation."  (*Id.*, PageID.482). While this is true, the result for "Aspen Dental Management, Inc." shows that that company's president is Fontana and that his address is the same as the address plaintiffs used for service.  (*Id.*, PageID.490).  Thus, plaintiffs' attempt at service was made to a proper address, as N.Y. C.P.L.R. 312-a allows for service by mail to any authorized employee of the defendant.  However, given that the name of the entity was wrong, and that Aspen Dental has not, itself, appeared in this matter,

29

service was still improper.  *See Phillips v. Cap. Internal Med. Assocs., P.C.*, No. 1:23-CV-429, 2023 WL 8467789, at *3 (W.D. Mich. Dec. 7, 2023) (explaining that "[c]ourts in this Circuit have interpreted *Friedman* [*v. Est. of Presser*, 929 F.2d 1151 (6th Cir. 1991)] to impose a strict reading of Rule 4 (a)(1) on plaintiffs.").

Furthermore, plaintiffs' mailing to Aspen Dental does not appear to have been restricted to the defendant; the "restricted delivery" line was crossed out, and "certified mail" was checked.  (ECF No. 27, PageID.435).  This resulted in the mail being accepted by "D. Henry," who is not a known officer or employee of Aspen Dental.  (*Id.*).  D. Henry did not check the "Agent" or "Addressee" box by his signature.  (*Id.*).  Although N.Y. C.P.L.R. 312-a does not appear to strictly require the service mailing to be restricted to the addressee, under *Hellander*, another method of service must be attempted when the *defendant* fails to return a signed acknowledgment of receipt to the plaintiff.  Plaintiffs have not shown that D. Henry was authorized to accept service on Aspen Dental's behalf.

Due to these issues, plaintiffs are not entitled to a default judgment against Aspen Dental, and the Clerk's entry of default as to Aspen Dental should be set aside.  Additionally, Plaintiffs' motion for an order to show cause, (ECF No. 38), should be denied.

### 2.      Motion to Dismiss

Counsel for Fontana, Griffee, and Griffee Dental argue that dismissal is

appropriate because Aspen Dental has not been properly served and because plaintiffs have not demonstrated personal jurisdiction over it.

As to service, a court could simply grant plaintiffs additional time to effect service where, as here, the proper entity to be sued is known. *See, e.g.*, *Phillips*, 2023 WL 8467789, at *4 ("Plaintiffs have thirty (30) days to correct their error and serve Kozlowski with a summons and complaint that complies with the requirements of Rule 4."). Here, however, dismissal is appropriate because on the face of the complaint, there are insufficient facts to plausibly show that this Court has personal jurisdiction over Aspen Dental.

Plaintiffs' jurisdictional failings have been described in detail above regarding Fontana, Griffee, and Griffee Dental. Aspen Dental's only connection to plaintiffs' claims is that it is allegedly related to, or acting in concert with, those defendants. While Aspen Dental maintains a registered agent in Michigan (which was not used by plaintiffs for service), it is a "foreign profit corporation" based in New York and incorporated under the laws of Delaware. (ECF No. 35, PageID.490). It is thus not "physically served in Michigan, [ ] domiciled in Michigan, or consent[ing] to the exercise of personal jurisdiction." *Bagsby*, 195 F. Supp. 2d at 962. Nor can Aspen Dental be said to be "at home" in Michigan, which is neither its state of incorporation nor principal place of business. *Sullivan*, 585 F. Supp. 3d at 1000. Plaintiffs have thus not demonstrated that Aspen Dental

31

is subject to general personal jurisdiction in the state of Michigan.

As for limited personal jurisdiction, the result is the same as for Fontana, Griffee, and Griffee Dental.  The facts of this case, including Etelka's agreement to pay for dental services and the inadequate and incomplete services she allegedly received, occurred in Florida.  The only connection to Michigan is that two of the plaintiffs, Etelka and Rudolf, now reside here.  This does not create the minimum contacts required to hale Aspen Dental into a Michigan court.  Therefore, Aspen Dental should be dismissed for lack of personal jurisdiction.

## VII.   Conclusion

For the reasons stated above, the undersigned recommends that defendants' motions to dismiss, (ECF Nos. 7, 13, 35), be GRANTED; that Bill Wodjak be DISMISSED *SUA SPONTE*; that the remaining motions filed by plaintiffs, (ECF Nos. 12, 21, 38), be DENIED; and that the case be DISMISSED.

Finally, the parties are reminded that under the Court's October 30, 2023 order, (ECF No. 43), the case remains stayed until the district court rules on this R&R, with the exception of objections to this R&R and responses to the objections.

Dated: February 1, 2024          s/Kimberly G. Altman____
Detroit, Michigan                 KIMBERLY G. ALTMAN
                                  United States Magistrate Judge

## **NOTICE TO PARTIES REGARDING OBJECTIONS**

32

The parties to this action may object to and seek review of this Report and Recommendation.  Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 1, 2024.

s/Carolyn Ciesla
CAROLYN CIESLA
Case Manager
